

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00442-CV

---

IN THE INTEREST OF K.J., A CHILD

---

On Appeal from the County Court at Law No. 3
Lubbock County, Texas
Trial Court No. DC-2022-FM-2278, Honorable Kelley Tesch, Presiding

---

May 14, 2024

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, L.J., (Mother) appeals the trial court's order terminating her parental rights to her son, K.J.[1]  Through a single issue, Mother contends the evidence was insufficient to support the trial court's findings that termination was in K.J.'s best interest. After reviewing the record, we affirm.

---

[1] To protect the privacy of the parties involved, we refer to the child by initials and to the parents of the child as "Mother" and "Father."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  K.J.'s father filed an affidavit of relinquishment of his parental rights prompting an order of termination of his parental rights to K.J.  He did not appeal.

**Background**

In November 2023, the trial court terminated Mother's parental rights to K.J., finding by clear and convincing evidence that Mother had violated three statutory grounds warranting termination and that ending these rights was in K.J.'s best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O).[2] The sequence of events leading to this decision began a year earlier when the Department of Family and Protective Services (DFPS) filed a petition to remove K.J. from Mother's care.[3] K.J. had been taken to a hospital following a two-hour seizure caused by ingesting methamphetamine.[4] Hospital records described K.J.'s condition as having "a high probability of imminent or life[-]threatening deterioration." He was placed under the care of F.B., his Mother's maternal aunt.

Mother was subject to a family plan, which required her compliance with a number of steps related to verifying her ability to adequately care for K.J. She violated several of these requirements, including the following:

- Maintaining a Drug-Free Lifestyle and Submitting to Drug Testing: The plan mandated a complete drug and alcohol assessment, maintaining a drug-free lifestyle, and submiting to random drug tests. The evidence showed Mother used methamphetamine sporadically

---

[2] The trial court determined Mother had "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotion well-being of the child;" TEX. FAM. CODE ANN. § 161.001(b)(1)(D), "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child;" *id.* at (E) and "failed to comply with the provisions of a court order that specifically established the actions necessary for a parent to obtain return of the child." *Id.* at (O).

[3] K.J. was a little more than one and one-half years old at the time.

[4] Hospital records indicate he was suffering from methamphetamine poisoning and treated for seizures. He tested positive for methamphetamine.

during the pendency of the case, missed three drug tests,[5] and tested positive in four others.

- <u>Weekly Visits with K.J.</u>: The plan required Mother to visit K.J. for one hour each week. However, after Mother moved from Lubbock to Big Spring, Texas, she opted to interact with her son over FaceTime. She made this choice despite the Department's offer to provide transportation to facilitate in-person visits.

- <u>Stable Employment and Income Verification</u>: Mother was required to maintain steady employment, provide pay stubs, and share her employer's contact information. She reported working as an online assistant and provided a letter verifying her employment. However, the Department's designated permanency specialist was unable to verify this employment or contact the employer; Mother failed to provide proof of wages.

- <u>Stable Housing</u>: Mother was required to maintain stable, drug-free housing. However, she changed her residence four times, including two instances in which she was evicted from apartments. She reported she was living with her grandmother on other occasions, though the caseworker was unable to verify this claim.[6]

By contrast, testimony from the caseworker reveals that K.J. has formed a strong bond with F.B., his mother's maternal aunt, and is adapting well to his new life in her care. The caseworker described F.B.'s residence as "very appropriate," noting it as very clean and safe, with F.B.'s two adult sons also living there. F.B. is actively pursuing long-term adoptive placement and is in the process of obtaining a license as an adoptive home. Given the mother's consistent drug use, unstable housing, and lack of contact, the caseworker recommended terminating the mother's parental rights to facilitate K.J.'s

---

[5] The court's order and Mother's service plan stated that the failure to appear for a scheduled drug test would be treated as a "positive" test and a failure to follow the trial court's order and service plan.

[6] The caseworker attempted monthly visits with Mother but was unable to meet at her home for four months.

adoption. She emphasized that this termination would eliminate a major obstacle to securing a stable and permanent home for K.J. with F.B.

On appeal, Mother does not challenge any statutory ground relied on by the trial court in ordering the termination of her parental rights. Instead, she asserts that termination of her parental rights was not in K.J.'s best interest.

**Analysis**

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of a heightened evidentiary standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). The applicable standards for reviewing the evidence are discussed in our opinion in *In re A.M.*, No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.). As factfinder, the district court was the exclusive judge of the credibility of the witnesses and the weight given their testimony. *In re H.E.B.*, No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.). To assess the trial court's best-interest determination, we may consider the factors announced in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

In this case, the record demonstrates by clear and convincing evidence that K.J., while in his mother's care, suffered a life-threatening crisis by ingesting methamphetamine. When the Department removed K.J. from Mother's care, she was required to maintain a drug-free lifestyle, undergo random drug testing, secure stable housing, and maintain stable employment as conditions for his return. However, she failed to meet these conditions: she missed scheduled drug tests, tested positive on

4

multiple occasions, and admitted to sporadic methamphetamine use during the proceedings. Additionally, Mother changed her residence four times and was unable to provide verifiable evidence of employment or stable living conditions, undermining her ability to provide a secure environment for K.J. Moreover, after her move to another community, and despite being provided transportation to see her son in person, Mother elected to use electronic communications as her method of contact. A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in K.J.'s best interest. *See In re K.A.A.*, No. 07-21-00296-CV, 2022 Tex. App. LEXIS 2570, at *7 (Tex. App.—Amarillo Apr. 20, 2022, no pet.).

Meanwhile, K.J. has developed a significant bond with F.B., his mother's aunt. F.B. is actively pursuing adoption and has provided K.J. with a stable and nurturing home environment. The evidence permits the reasonable conclusion that F.B.'s home, shared with her two adult children, offers the stability and permanency that K.J. needs. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.) (recognizing a child's need for permanence through a stable home as of paramount consideration when assessing best interest).

Having considered the evidence, we conclude the trial court could have formed a firm belief that termination of Mother's parental rights was in K.J.'s best interest. Mother's single issue is overruled. We affirm the trial court's order of termination.

Lawrence M. Doss
Justice

5